## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 11, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. _____** |
| | : | |
| **Plaintiff,** | : | **GRAND JURY ORIGINAL** |
| | : | **MAGISTRATE No.:   06-392M** |
| | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 371 (Count 1);** |
| **v.** | : | **Conspiracy to Defraud the United States** |
| | : | **and to Commit Offenses Against** |
| | : | **the United States** |
| | : | |
| | : | **18 U.S.C. § 1001 (Counts 2-5);** |
| | : | **False Statement** |
| | : | |
| | : | **18 U.S.C. § 1341 (Counts 6-9);** |
| | : | **Mail Fraud** |
| **MARILYN G. ONG and** | : | |
| **ILDEFONSO ONG, JR.,** | : | **18 U.S.C. § 1957 (Counts 10-18);** |
| **a/k/a LONG ONG,** | : | **Money Laundering** |
| | : | |
| **Defendants.** | : | **18 U.S.C. § 1505 (Count 19);** |
| | : | **Obstruction of Proceeding Before** |
| | : | **Department and Agency** |
| | : | **of the United States** |
| | : | |
| | : | **18 U.S.C. § 2;** |
| | : | **Aiding and Abetting and** |
| | : | **Causing an Act to be Done** |
| | : | |
| | : | **18 U.S.C. § 982;** |
| _____ | : | **Forfeiture** |

**INDICTMENT**

The Grand Jury charges that at all times material to this Indictment:

**INTRODUCTION**

1.    MARILYN G. ONG ("MARILYN ONG") was a loan broker living in Manila, Philippines.  From in or about November 1999 through in or about May 2005, MARILYN ONG brokered approximately $40 million worth of fraudulent loan transactions between companies located in the Philippines and United States lending banks, in which the Export-Import Bank of the United States ("Ex-Im Bank") acted as guarantor or insurer.  As a loan broker, MARILYN ONG identified companies in the Philippines that wanted to borrow money to purchase United States goods and lending banks in the United States that would lend money for the purpose of buying United States goods.  MARILYN ONG then assisted the borrowers in executing loan agreements with the lending banks and in obtaining loan guarantees or insurance policies from the Ex-Im Bank as part of the loan agreements.  MARILYN ONG recruited United States exporters to purchase and ship the United States goods to the Philippine borrowers.  At the direction of MARILYN ONG, the exporters prepared false shipping documents and submitted those false documents to the lending banks, knowing that information contained in those documents would be sent to and relied upon by the Ex-Im Bank, misappropriated the loan proceeds, and sent most of the loan proceeds to companies owned and controlled by MARILYN ONG.

2.    ILDEFONSO ONG, JR., a/k/a LONG ONG ("ILDEFONSO ONG"), was a nephew of MARILYN ONG and her representative in the United States.  ILDEFONSO ONG assisted MARILYN ONG in hiding the nature of the fraudulent loan transactions by arranging

for the shipment to the Philippines of goods that had little to no value, to make it appear that the United States exporters were actually shipping the goods specified in the shipping documents. ILDEFONSO ONG also used bank accounts he controlled to misappropriate loan proceeds and hide the transfer of loan proceeds to MARILYN ONG and other foreign companies and individuals.

3.      In addition to his role assisting MARILYN ONG with hiding the nature of the fraudulent loan transactions arranged through other exporters, ILDEFONSO ONG also acted as an "exporter" in three fraudulent loan transactions through M&W Financial Corporation ("M&W Financial") and SINA Trading, companies owned by MARILYN ONG and operated by ILDEFONSO ONG.  MARILYN ONG brokered each of these fraudulent loan transactions.  In each case, ILDEFONSO ONG prepared false shipping documents and submitted those false documents to the lending banks, knowing that information contained in the documents would be sent to and relied upon by the Ex-Im Bank, misappropriated approximately $2.5 million in loan proceeds, and sent more than $1.5 million in loan proceeds to companies owned and controlled by MARILYN ONG and other foreign bank accounts as directed by MARILYN ONG.

4.      Daniel Curran ("Curran") was married to MARILYN ONG's niece and was the owner of an exporting company based first in Yonkers, New York and later in Boynton Beach, Florida, called Dankim Trading.  Curran acted as an "exporter" in approximately twenty-five fraudulent loan transactions brokered by MARILYN ONG.  In these transactions, Curran prepared shipping documents that falsely represented the type, amount, value and country of origin of the goods to be shipped to the Philippines, submitted those false documents to the lending banks, knowing that the information contained in the documents would be sent to and

3

relied upon by the Ex-Im Bank, misappropriated approximately $25 million in loan proceeds, and sent approximately $24 million of those loan proceeds to companies owned and controlled by MARILYN ONG and ILDEFONSO ONG and other foreign bank accounts as directed by MARILYN ONG.

5.      Edward Chua ("Chua") was a cousin of MARILYN ONG and the owner of exporting companies based in Montebello, California, called EMMCCO and ECCO.  Chua acted as an "exporter" in approximately fifteen fraudulent loan transactions brokered by MARILYN ONG.  In these transactions, Chua prepared shipping documents that falsely represented the type, amount, value and country of origin of the goods to be shipped to the Philippines, submitted those false documents to the lending banks, knowing that information contained in the documents would be sent to and relied upon by the Ex-Im Bank, misappropriated approximately $10 million in loan proceeds, and sent approximately $9.5 million of those loan proceeds to companies owned and controlled by MARILYN ONG and ILDEFONSO ONG and other foreign bank accounts as directed by MARILYN ONG.

6.      The Ex-Im Bank was an independent agency of the United States and had its headquarters located at 811 Vermont Avenue, N.W., Washington, D.C. 20571.  It was the official export credit agency of the United States.  The mission of the Ex-Im Bank was to assist in the export of United States goods to companies overseas.  One of the ways the Ex-Im Bank fulfilled this mission was by issuing loan guarantees and insurance to lending banks on behalf of creditworthy foreign companies for the purpose of purchasing goods made in the United States.  Once the Ex-Im Bank issued a loan guarantee or insurance policy, if the foreign borrower defaulted on its loan repayments to a lending bank, the Ex-Im Bank paid the amount of the

4

outstanding loan to the lending bank.  In connection with the issuance of loan guarantees and insurance policies, the Ex-Im Bank required that a lending bank obtain certain shipping documentation from the United States exporter.  The exporter was the entity that shipped the United States goods on behalf of the foreign borrower.  The Ex-Im Bank required that an exporter certify to the lending bank the type, amount, and value of the United States goods that it had shipped and that the goods shipped were made in the United States.  These certifications were typically made in a standard Ex-Im Bank form called an Export-Import Bank Form of Exporter's Certificate ("Ex-Im Bank Exporter's Certificate"), where the exporter certified that the shipping information provided was true and accurate, as well as in a Commercial Invoice, where the exporter listed the amount and type of United States goods purchased and shipped. Without these certifications and Commercial Invoices, the lending bank would not be able to obtain the Ex-Im Bank loan guarantees and insurance.

7.     Relying on information contained in fraudulent shipping documents submitted at the direction of MARILYN ONG to the lending banks by ILDEFONSO ONG, Curran, and Chua, the Ex-Im Bank provided several United States lending banks with a total of approximately $38 million worth of loan guarantees and insurance, promising that the Ex-Im Bank would reimburse the lending banks for any losses they incurred in the loan transactions brokered by MARILYN ONG.  As a result of defaults related to the fraudulent loan transactions brokered by MARILYN ONG, and facilitated by ILDEFONSO ONG, Curran, and Chua, the Ex-Im Bank has paid out a total of approximately $30 million in claims to several lending banks.

**Count One**
**(Conspiracy to Defraud the United States)**

<u>THE CONSPIRACY AND ITS OBJECTS</u>

8.      From in or about November 1999 through in or about December 2005, in the

District of Columbia and elsewhere, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and

others known and unknown to the Grand Jury did unlawfully and knowingly agree, combine and

conspire together and with each other and others to defraud the United States and agencies

thereof and to commit the following offenses against the United States:

a.      to defraud the United States of and concerning its right to have its officers
and employees, and particularly the personnel of the Ex-Im Bank, free to
transact the official business of the United States unhindered, unhampered,
unobstructed and unimpared by the exertion upon them of dishonest,
corrupt, unlawful, improper and undue pressure and influence, in violation
of Title 18, United States Code, Section 371;

b.      to defraud the Ex-Im Bank, an agency of the United States, to obtain
money and property by means of false and fraudulent pretenses,
representations, and promises, in violation of Title 18, United States Code,
Section 371;

c.      to knowingly and willfully make and cause to be made, in a matter within
the jurisdiction of the Ex-Im Bank, an Executive Branch agency of the
United States, a materially false, fictitious, and fraudulent statement and
representation, in violation of Title 18, United States Code, Section 1001;

d.      to knowingly devise, and intend to devise, through the use of a
commercial interstate carrier, a scheme and artifice to defraud the United
States and the Ex-Im Bank, and to obtain money and property by means of
materially false and fraudulent pretenses, representations and promises, in
violation of Title 18, United States Code, Section 1341;

e.      to knowingly engage in and cause to be engaged in monetary transactions
by, through, and to a financial institution, affecting interstate and foreign
commerce, in criminally derived property of a value greater than $10,000
and derived from specified unlawful activity; that is, transferred the
proceeds of the fraudulent loans to bank accounts owned and controlled by

co-conspirators, contrary to Title 18, United States Code, Section 1957; and

    f.    to corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due and proper administration of the law under which a pending investigation was being conducted by the Export-Import Bank of the United States, in violation of Title 18, United States Code, Section 1505.

## Nature and Purpose of the Conspiracy

9.    The nature and purpose of the conspiracy was for MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent information to the Ex-Im Bank, through the lending banks, to obtain loan proceeds on behalf of Philippine borrowers, and to misappropriate the loan proceeds.

## Manner and Means of the Conspiracy

10.    To carry out the conspiracy, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury used the following manner and means, among others:

    a.    MARILYN ONG identified borrowers in the Philippines and lending banks in the United States and assisted the Philippine borrowers in executing loan agreements with the lending banks by obtaining loan guarantees and export credit insurance through the Ex-Im Bank.

    b.    MARILYN ONG caused the lending banks to submit false and fraudulent Applications for Medium-Term Insurance to the Ex-Im Bank, in Washington, D.C., for the

purposes of obtaining Ex-Im Bank loan guarantees and insurance covering the Philippine loan transactions.

       c.     MARILYN ONG instructed ILDEFONSO ONG, Curran and Chua to prepare shipping documents, including Ex-Im Bank Exporter's Certificates and Commercial Invoices, for submission to the lending banks that falsely represented the type, amount, value, and country of origin of the goods to be shipped to the Philippines, knowing that the false information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

       d.     At the direction of MARILYN ONG, ILDEFONSO ONG, Curran and Chua caused the submission to the Ex-Im Bank, through the lending banks, of the false shipping documents, including the Ex-Im Bank Exporter's Certificates and Commercial Invoices.

       e.     ILDEFONSO ONG assisted Curran and Chua by coordinating the shipment of the non-conforming goods from the United States to the Philippines, to make it appear that the United States goods listed in the shipping documents were actually being shipped to the borrowers in the Philippines.

       f.     ILDEFONSO ONG, Curran and Chua received the proceeds of the loans from the lending banks, distributed a portion of the proceeds amongst themselves for their own personal benefit and use, and then transferred millions of dollars of loan proceeds to bank accounts owned and controlled by MARILYN ONG and ILDEFONSO ONG and other foreign bank accounts as directed by MARILYN ONG.

       g.     After receiving portions of the fraudulent loan proceeds obtained by Curran and Chua, ILDEFONSO ONG transferred portions of those proceeds to foreign bank

accounts as directed by MARILYN ONG and used additional proceeds to pay down other loans brokered by MARILYN ONG.

Overt Acts

11.    Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury committed the following overt acts, among others:

Loan Transactions Facilitated by ILDEFONSO ONG

a.    From in or about August 2001 through in or about August 2003, ILDEFONSO ONG acted as exporter in three loan transactions brokered by MARILYN ONG between Philippine companies and United States lending banks, in which the Ex-Im Bank guaranteed or insured the loans and together caused the submission of three false and fraudulent Applications for Medium-Term Insurance to the Ex-Im Bank

b.    From in or about August 2001 through in or about August 2003, ILDEFONSO ONG prepared false shipping documents, including Ex-Im Bank Exporter's Certificates and Commercial Invoices, stating that he had purchased approximately $2.8 million worth of United States goods and shipped those goods to the Philippine borrowers.

c.    From in or about August 2001 through in or about August 2003, ILDEFONSO ONG sent to the lending banks the false shipping documents that he had prepared, as proof that he had purchased approximately $2.8 million worth of United States goods and shipped those goods to the Philippine borrowers, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

9

      d.     On or about August 6, 2003, ILDEFONSO ONG prepared false shipping documents, including a false Ex-Im Bank Exporter's Certificate and Commercial Invoice, involving a loan to D'MBB Farm Machinery, and sent those false shipping documents to the lending bank, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

      e.     From in or about August 2001 through in or about August 2003, ILDEFONSO ONG received a total of approximately $2.5 million in loan proceeds from various lending banks.  Rather than using the loan proceeds to purchase United States goods, ILDEFONSO ONG kept approximately $200,000 of the loan proceeds and transferred more than $1.5 million to bank accounts owned and controlled by MARILYN ONG and foreign bank accounts as directed by MARILYN ONG.

Loan Transactions Facilitated by Daniel Curran

      f.     From in or about December 2000 through in or about May 2005, Curran acted as exporter in approximately twenty-five loan transactions brokered by MARILYN ONG between Philippine companies and United States lending banks, in which the Ex-Im Bank guaranteed or insured the loans.

      g.     From in or about December 2000 through in or about May 2005, MARILYN ONG and Curran caused the submission of approximately twenty-five false and fraudulent Applications for Medium-Term Insurance to the Ex-Im Bank.

      h.     From in or about December 2000 through in or about May 2005, Curran prepared false shipping documents, including Ex-Im Bank Exporter's Certificates and

Commercial Invoices, stating that he had purchased approximately $30 million worth of United

States goods and shipped those goods to the Philippine borrowers.

i.      From in or about December 2000 through in or about May 2005, Curran

sent to the lending banks the false shipping documents that he had prepared, as proof that he had

purchased approximately $30 million worth of United States goods and shipped those goods to

the Philippine borrowers, knowing that the information contained in those documents would be

sent to and relied upon by the Ex-Im Bank.

j.      On or about March 16, 2004, Curran prepared false shipping documents,

including a false Ex-Im Bank Exporter's Certificate and Commercial Invoice, involving a loan to

San Rafael Packaging, and sent those false shipping documents to the lending bank, knowing

that the information contained in those documents would be sent to and relied upon by the Ex-Im

Bank.

k.      From in or about December 2000 through in or about May 2005, Curran

received approximately $25 million in loan proceeds from the lending banks.  Rather than using

the loan proceeds to purchase United States goods, Curran kept approximately $700,000 of the

loan proceeds and transferred approximately $24 million to bank accounts owned or controlled

by MARILYN ONG and ILDEFONSO ONG and other foreign bank accounts as directed by

MARILYN ONG.

<u>Loan Transactions Facilitated by Edward Chua</u>

l.      From in or about November 1999 through in or about January 2005,

Chua acted as exporter in approximately fifteen loan transactions brokered by MARILYN ONG between Philippine companies and United States lending banks, in which the Ex-Im Bank guaranteed or insured the loans.

m.    From in or about November 1999 through in or about January 2005, MARILYN ONG and Chua caused the submission of approximately fifteen false and fraudulent Applications for Medium-Term Insurance to the Ex-Im Bank.

n.    From in or about November 1999 through in or about January 2005, Chua prepared false shipping documents, including Ex-Im Bank Exporter's Certificates and Commercial Invoices, stating that he had purchased approximately $12 million worth of United States goods and shipped those goods to the Philippine borrowers.

o.    From in or about November 1999 through in or about January 2005, Chua sent to the lending banks the false shipping documents that he had prepared, as proof that he had purchased approximately $12 million worth of United States goods and shipped those goods to the Philippine borrowers, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

p.    On or about November 3, 2003, Chua prepared false shipping documents, including a false Ex-Im Bank Exporter's Certificate and Commercial Invoice, involving a loan to R. Jorgenetics Swine Improvement Corp., and sent those false shipping documents to the lending bank, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

q.    From in or about November 1999 through in or about January 2005, Chua

received approximately $10 million in loan proceeds from the lending banks.  Rather than using

the loan proceeds to purchase United States goods, Chua kept approximately $400,000 of the

loan proceeds and transferred approximately $9.5 million to bank accounts owned or controlled

by MARILYN ONG and ILDEFONSO ONG and other foreign bank accounts as directed by

MARILYN ONG.

<u>Paying Down Loans to Further Fraud</u>

r.    On or about June 20, 2003, ILDEFONSO ONG transferred approximately

$10,000 from the SINA Trading bank account at Union Bank of California to First International

Bank to pay down a loan brokered by MARILYN ONG between Philippine borrower Anaware

Ventures and United States lender First International Bank.

s.    On or about December 9, 2003, ILDEFONSO ONG transferred

approximately $118,000 from the SINA Trading bank account at Union Bank of California to

US Bank to pay down a loan brokered by MARILYN ONG between Philippine borrower

Radphil Corporation and United States lender US Bank.

t.    On or about January 9, 2004, ILDEFONSO ONG transferred

approximately $114,777.50 from the SINA Trading bank account at Union Bank of California to

UPS Capital Business Credit to pay down a loan brokered by MARILYN ONG between

Philippine borrower Stoneworks and United States lender UPS Capital Business Credit.

u.    On or about February 23, 2004, ILDEFONSO ONG transferred

approximately $90,000 from the SINA Trading bank account at Union Bank of California to

UPS Capital Business Credit to pay down a loan brokered by MARILYN ONG between

Philippine borrower Crystal Ice Maker and United States lender UPS Capital Business Credit.

13

v.      On or about August 4, 2004, ILDEFONSO ONG transferred approximately $79,748 from the American Pacific Corp. bank account at Union Bank of California to Guaranty Bank of California to pay down a loan brokered by MARILYN ONG between Philippine borrower Blue Palm Development and Realty Corporation and United States lender Guaranty Bank of California.

w.      On or about January 28, 2005, ILDEFONSO ONG transferred approximately $26,512.60 from the American Pacific Corp. bank account at Union Bank of California to East West Bank of California to pay down a loan brokered by MARILYN ONG between Philippine borrower MB Bergonio Poultry Farm Equipment and United States lender East West Bank of California.

x.      On or about February 10, 2005, ILDEFONSO ONG transferred approximately $60,000 from the American Pacific Corp. bank account at Union Bank of California to UPS Capital Business Credit to pay down a loan brokered by MARILYN ONG between Philippine borrower Stoneworks and United States lender UPS Capital Business Credit.

<u>Attempt to Obstruct Investigation</u>

y.       In or about September 2005, after several loans brokered by MARILYN ONG went into default and after the Ex-Im Bank began investigating these defaults, MARILYN ONG instructed Curran to provide materially false and misleading information to agents of the Ex-Im Bank and to destroy several years worth of documents he maintained related to the fraudulent loan transactions.

**(Conspiracy to Defraud the United States and to Commit Offenses Against the United States, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2 and 371)**

14

## COUNTS 2-5
### (False Statements)

12.     Paragraphs 1 through 7 and 11 of this Indictment are realleged and incorporated by reference as if set out in full.

13.     As described below, from in or about August 2003 through in or about November 2004, in the District of Columbia and elsewhere, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury did knowingly and willfully make and cause to be made, in a matter within the jurisdiction of the Ex-Im Bank, an Executive Branch agency of the United States, materially false, fictitious and fraudulent statements and representations to the Ex-Im Bank:

| Count | Defendants | On or about Date | False Statement to the Ex-Im Bank |
|-------|-----------|------------------|-----------------------------------|
| 2 | MARILYN ONG  ILDEFONSO ONG | 8/22/2003 | Application for Medium-Term Insurance for R. Jorgenetics Swine Improvement Corp. loan, sent from an agent of US Bank to the Ex-Im Bank in Washington, D.C. |
| 3 | MARILYN ONG  ILDEFONSO ONG | 1/15/2004 | Application for Medium-Term Insurance for San Rafael Packaging Corp. loan, sent from an agent of Bank of the West to the Ex-Im Bank in Washington, D.C. |
| 4 | MARILYN ONG  ILDEFONSO ONG | 7/26/2004 | Application for Medium-Term Insurance for Premium Agro-Vet Products, Inc. loan, sent from an agent of US Bank to the Ex-Im Bank in Washington, D.C. |

| 5 | MARILYN ONG<br><br>ILDEFONSO ONG | 11/1/2004 | Application for Medium-Term Insurance for DwightSteel Building Systems, Inc. loan, sent from an agent of Guaranty Bank of California to the Ex-Im Bank in Washington, D.C. |

**(False Statements, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2 and 1001)**

### COUNTS 6-9
### (Mail Fraud)

14.     Paragraphs 1 through 7 and 11 of this Indictment are realleged and incorporated by reference as if set out in full.

15.     As described below, from in or about August 2003 through in or about November 2004, in the District of Columbia and elsewhere, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud, did knowingly cause to be transmitted in interstate commerce, by means of commercial interstate carrier, false and fraudulent Applications for Medium-Term Insurance from various lending banks to the Ex-Im Bank, knowing that those false documents would be relied upon by the Ex-Im Bank:

| Count | Defendants | On or about Date | Use of Commercial Interstate Carrier |
|-------|-----------|------------------|--------------------------------------|
| 6 | MARILYN ONG<br><br>ILDEFONSO ONG | 8/22/2003 | Application for Medium-Term Insurance for R. Jorgenetics Swine Improvement Corp. loan, sent from an agent of US Bank, in California, to the Ex-Im Bank in Washington, D.C. |

| 7 | MARILYN ONG<br><br>ILDEFONSO ONG | 1/15/2004 | Application for Medium-Term Insurance for San Rafael Packaging Corp. loan, sent from an agent of Bank of the West, in California, to the Ex-Im Bank in Washington, D.C. |
|---|---|---|---|
| 8 | MARILYN ONG<br><br>ILDEFONSO ONG | 7/26/2004 | Application for Medium-Term Insurance for Premium Agro-Vet Products, Inc. loan, sent from an agent of US Bank, in California, to the Ex-Im Bank in Washington, D.C. |
| 9 | MARILYN ONG<br><br>ILDEFONSO ONG | 11/1/2004 | Application for Medium-Term Insurance for DwightSteel Building Systems, Inc. loan, sent from an agent of Guaranty Bank of California, in California, to the Ex-Im Bank in Washington, D.C. |

**(Mail Fraud, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2 and 1341)**

### COUNTS 10-18
### (Money Laundering)

16.     Paragraphs 1 through 7 and 11 of this Indictment are realleged and incorporated by reference as if set out in full.

17.     As described below, from in or about September 2003 through in or about December 2004, in the District of Columbia and elsewhere, MARILYN ONG, ILDEFONSO ONG, Curran, Chua, and others known and unknown to the Grand Jury did knowingly engage and cause to be engaged in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud:

17

| Count | Defendants | On or about Date | Financial Transaction | Specified Unlawful Activity |
|---|---|---|---|---|
| 10 | MARILYN ONG<br><br>ILDEFONSO ONG | 9/29/2003 | Wire transfer of approximately $120,000 from Dankim Trading to SINA Trading & Financial Corp. | Mail Fraud |
| 11 | MARILYN ONG<br><br>ILDEFONSO ONG | 10/2/2003 | Wire transfer of approximately $50,000 from Dankim Trading to MARILYN ONG | Mail Fraud |
| 12 | MARILYN ONG<br><br>ILDEFONSO ONG | 1/8/2004 | Wire transfer of approximately $86,000 from ECCO to MARILYN ONG | Mail Fraud |
| 13 | MARILYN ONG<br><br>ILDEFONSO ONG | 1/8/2004 | Intra-bank transfer of approximately $147,000 from ECCO to SINA Trading | Mail Fraud |
| 14 | MARILYN ONG<br><br>ILDEFONSO ONG | 3/30/2004 | Wire transfer of approximately $50,000 from Dankim Trading to SINA Trading & Financial Corp. | Mail Fraud |
| 15 | MARILYN ONG<br><br>ILDEFONSO ONG | 3/31/2004 | Wire transfer of approximately $180,000 from Dankim Trading to American Pacific Corp. | Mail Fraud |
| 16 | MARILYN ONG<br><br>ILDEFONSO ONG | 11/29/2004 | Check for $400,000 from ECCO to American Pacific Corp. | Mail Fraud |

| 17 | MARILYN ONG<br><br>ILDEFONSO ONG | 12/10/2004 | Wire transfer of approximately $85,295 from Dankim Trading to American Pacific Corp. | Mail Fraud |
|----|------|-----------|------|------|
| 18 | MARILYN ONG<br><br>ILDEFONSO ONG | 12/10/2004 | Wire transfer of approximately $133,950 from Dankim Trading to MARILYN ONG | Mail Fraud |

**(Money Laundering, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2 and 1957)**

## COUNT 19
**(Obstruction of Proceeding Before Department and Agency of the United States)**

18.     Paragraphs 1 through 7 and 11 of this Indictment are realleged and incorporated by reference as if set out in full.

19.     In or about September 2005, MARILYIN ONG notified Curran that agents of the Ex-Im Bank had commenced an official investigation into Philippine loan defaults, including defaults on loans brokered by MARILYN ONG.

20.     In or about September 2005, MARILYN ONG instructed Curran to provide materially false and misleading information to agents of the Ex-Im Bank related to the Philippine loans and instructed Curran to destroy documents sought by the Ex-Im Bank's agents related to those loans, knowing and intending that the materially false and misleading information would be communicated to the Ex-Im Bank.

21.     In or about September 2005, MARILYN ONG, in the District of Columbia and elsewhere, did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was

19

being had before any department and agency of the United States; that is, MARILYN ONG

instructed Curran to provide materially false and misleading information to agents of the Ex-Im

Bank and to destroy documents being sought by investigators hired by the Ex-Im Bank, an

agency of the United States, conducting an investigation as authorized by law into Philippine

loan defaults.

**(Obstruction of Proceeding Before Department and Agency of the United States, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 2 and 1505)**

## FORFEITURE

22.     The violations alleged in Counts 6-9 and Counts 10-18 of this Indictment are

realleged and incorporated by reference herein for the purpose of alleging forfeiture to the

United States of America pursuant to Title 18, United States Code, Sections 981 and 982(a)(1),

and Title 28, United States Code, Section 2461(c).

23.     As a result of the mail fraud offenses alleged in Counts 6-9 of this Indictment,

defendants MARILYN ONG and ILDEFONSO ONG shall, upon conviction of such offenses

alleged in this Indictment, forfeit to the United States all property, real and personal, which

constitutes or is derived from proceeds traceable to the mail fraud offense, wherever located, and

in whatever name held, including, but not limited to a sum of money equal to the amount of

proceeds obtained as a result of the mail fraud, in violation of Title 18, United States Code,

Section 1341.  By virtue of the offenses charged in Counts 6-9 of the Indictment, any and all

interest that the defendants have in the property constituting, or derived from, proceeds obtained

directly or indirectly, as a result of such offenses is vested in the United States and hereby

forfeited to the United States pursuant to Title 18, United States Code, Section 981, in conjunction with Title 28, United States Code, Section 2461(c).

24.    As a result of the money laundering offenses alleged in Counts 10-18 of this Indictment, defendants MARILYN ONG and ILDEFONSO ONG shall forfeit to the United States any property, real or personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Section 1957, including but not limited to the sum of money equal to the total amount of property involved in, or traceable to property involved in those violations.  By virtue of the commission of the felony offenses charged in Counts 10-18 of this Indictment, any and all interest that the defendants have in the property involved in, or traceable to property involved in money laundering is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

25.    In the event that any property described above as being subject to forfeiture, as a result of any act or omission by the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to or deposited with a third person;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of MARILYN ONG and ILDEFONSO ONG up to the value of the above described property in paragraph 16(a)-(e).

**(Forfeiture, Title 18, United States Code, Sections 981 and 982(a)(1), Title 28, United States Code, Section 2461(c))**

A TRUE BILL

_____
FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

_____

U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION/FRAUD SECTION

_____

22